In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2312

DONALD R. JOHANSEN,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 01-C-613-S—**John C. Shabaz**, *Judge.*

ARGUED NOVEMBER 5, 2002—DECIDED DECEMBER 23, 2002

Before FLAUM, *Chief Judge*, and CUDAHY and COFFEY, *Circuit Judges.*

FLAUM, *Chief Judge.* Donald Johansen applied for Social Security benefits, alleging disability due primarily to back pain and depression. The administrative law judge ("ALJ") concluded that Johansen was not disabled, and the Appeals Council denied Johansen's petition for review. Johansen now appeals from the district court's judgment upholding the denial of benefits. We affirm.

## I. Background

### A. Johansen's Physical Impairments

Johansen, who was forty years old at the time of the ALJ's decision, began complaining of neck and upper back pain following a car accident in 1993. After magnetic resonance imaging ("MRI") revealed that he had a herniated disc and a bulging disc in his cervical spine, Johansen underwent physical therapy and took a ten-month leave of absence from his job as a forklift operator. He stopped working permanently after he re-injured his back in 1996. At that time Johansen's physician restricted him to lifting and carrying no more than twenty pounds.

During the next two years, Johansen visited a number of doctors, complaining of exacerbated pain in his back and extremities. On one occasion he suggested that the twenty-pound lifting and carrying limitation he received in 1996 was no longer appropriate because he was actually "unable to do things up to 20 pounds." The treatment notes from Johansen's doctors reveal, however, that his condition had not worsened since 1996. For instance, in January 1997 Johansen's primary physician, Dr. Mark Timmerman, stated that a neck examination and an MRI "show[ed] no significant change since 1993"; in February 1997 neurosurgeon Randy Florell also observed that Johansen's MRI results remained unchanged and that he had only "very minimal disk bulging," which in Dr. Florell's opinion was not "significant"; in March 1997 Dr. Florell noted that Johansen could still lift up to twenty pounds and could actually *increase* work activity "to include forklift driving . . . up to six hours per day"; in May 1997 a third physician, Dr. Frank Salvi, recommended a "gradual reduction in [Johansen's] current light duty work restrictions as his symptoms improve"; in October 1997 Dr. Salvi observed that Johansen's condition had "significantly improved" and recommended "ad-

vancing [him] to medium duty work restrictions"; and in November 1997 Dr. Salvi noted that Johansen continued to remain off work despite having been released to medium-duty work restrictions.

In March 1998 Johansen began seeing another physician, Dr. Robert Olson. According to Dr. Olson's notes, Johansen experienced some deterioration in his physical condition during 1998 and 1999. For instance, in August 1998 Johansen reported that he had to cut back on his exercise regimen because of knee pain. (He had been walking as much as one mile on a treadmill daily.) Johansen further reported in July 1999 that he was experiencing an increase in back and neck pain after doing some "heavy lifting" in connection with an apartment move. And in October 1999 an MRI revealed that Johansen's disc herniations had increased in size.

In March 1999 agency physician Kenneth Bussan reviewed Johansen's medical records and concluded that his condition limited him to medium work not requiring more than minimal overhead reaching. Specifically, Dr. Bussan found that Johansen could lift and carry twenty-five pounds frequently and fifty pounds occasionally, sit for six hours in an eight-hour workday, and stand or walk six hours in an eight-hour workday. In making his assessment, Dr. Bussan noted that Johansen had the ability to walk one mile a day on a treadmill.

In November 1999 Dr. Olson submitted his assessment of Johansen's physical ability to do work-related activities. Dr. Olson concluded that Johansen could occasionally lift and carry ten pounds and frequently carry less than ten pounds, stand or walk for about four hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. In Dr. Olson's opinion, Johansen's impairments would cause him to be absent from work more than three times a month.

*B. Johansen's Mental Impairments*

In March 1999 state-agency psychologist Linda Ingison examined Johansen and diagnosed him with dysthymia and panic disorder without agoraphobia. Dr. Ingison concluded that Johansen's "ability to withstand the pace, change, and stress in a typical workplace would appear to be limited." Dr. Ingison also observed that Johansen "appeared to be in some pain and had problems sitting and getting up from the chair. . . . He did not appear to be exaggerating or minimizing his symptoms."

Also in March 1999, agency medical consultant Anthony Matkom reviewed Johansen's file and concluded that he was "not significantly limited" in seventeen of twenty work-related areas of mental functioning. Dr. Matkom then determined that Johansen ranged between "moderately limited" and "not significantly limited" in the remaining three areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to accept instructions and respond appropriately to criticism from supervisors. Finally, Dr. Matkom translated his worksheet observations into an assessment of Johansen's mental residual functional capacity ("RFC") and concluded that he could perform repetitive, low-stress work.

Later, psychologist Kent Berney reviewed Johansen's files and appeared at the administrative hearing at the request of the agency. Dr. Berney testified that Johansen was moderately limited in his abilities to carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular

attendance, sustain an ordinary routine without special supervision, and complete a normal workday. When asked by Johansen's counsel to quantify "moderately limited," Dr. Berney explained that a "moderately limited" individual might experience difficulty in a given area of work-related functioning between twenty-five and fifty percent of the time.

## C. Administrative Proceedings

At the hearing the ALJ called vocational expert ("VE") Leslie Goldsmith and asked him to consider a hypothetical individual of Johansen's age, education, and work experience, who could perform low-stress, repetitive, unskilled work that did not involve lifting more than twenty pounds occasionally and ten pounds frequently. Goldsmith concluded that this hypothetical individual could not perform Johansen's past jobs of forklift operator, truck driver, or laboratory technician, but could perform a significant number of other jobs in the regional economy, such as production work and food preparation. Johansen's attorney then asked Goldsmith to consider an individual who was unable to maintain a regular schedule or complete a normal workweek between twenty-five to fifty percent of the time. Goldsmith responded that such an individual would not be able to perform sustained employment.

Johansen testified on his own behalf regarding his activities of daily living. According to his testimony, he cannot do any type of sports activity or regular household chores such as vacuuming; he has to lean his head against a cupboard for support while trying to do dishes; he needs to lie down for periods every day to relieve pressure on his neck; sometimes he feels like lying down all day; and on his good days, he will try to walk on the treadmill but can do so for only five to ten minutes at a time.

In a February 2000 decision, the ALJ concluded that Johansen was not disabled and accordingly denied his application for benefits. The ALJ found that Johansen's "medically determinable impairments could reasonably cause some, but not all, of the pain and symptoms alleged." The ALJ further determined that Dr. Olson's assessment of Johansen's physical RFC was not consistent with the record or with Johansen's own description of his activities of daily living. Instead, the ALJ agreed with Dr. Bussan that Johansen had the RFC to perform light work involving only limited overhead reaching. In coming to this conclusion, the ALJ emphasized the fact that Johansen had been given a light-work restriction in 1996. The ALJ then reasoned that, because Johansen's symptoms "have remained relatively unchanged since that period of time, with only brief periods of symptom increase," a limitation to light work was still appropriate.

With regard to Johansen's mental condition, the ALJ seemed to credit the opinion of Dr. Matkom that Johansen retained the RFC to perform low-stress, repetitive work. The ALJ expressly found credible VE Goldsmith's testimony that Johansen could not return to his past work as a forklift operator, laboratory technician, or truck driver, but that an individual fitting the ALJ's hypothetical could perform a significant number of jobs in the regional economy. The ALJ did not mention Goldsmith's other conclusion that an individual would not be able to perform sustained employment if he could not maintain a regular schedule or attendance twenty-five to fifty percent of the time.

## II. ANALYSIS

We review the ALJ's decision under the "substantial evidence" standard. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). Evidence is "substantial" if it is sufficient

for a reasonable person to accept as adequate to support the decision. *Id*. Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

On appeal Johansen first challenges the ALJ's conclusion that he retained the physical RFC to perform light work. In support of his position, Johansen points out certain factual inaccuracies in the ALJ's analysis, such as the finding that Johansen never objected to the light-work restriction imposed by his treating physician in 1996. But though Johansen is correct that the decision contains some factual errors, we find the ALJ's ultimate conclusion that Johansen could perform light work to be supported by substantial evidence. Specifically, the ALJ's decision is supported by the opinions of two of Johansen's treating physicians, Drs. Timmerman and Salvi, both of whom concluded in 1997 that a restriction to light work was appropriate. In fact Dr. Salvi's notes reveal that he recommended a gradual reduction in the light-duty work restrictions and that he eventually released Johansen to *medium*-duty work restrictions. Consultative physician Dr. Bussan also concluded in 1999 that Johansen was physically capable of performing medium work.

Johansen contends that the light-work restriction imposed in 1996 was no longer appropriate when the ALJ issued his decision in 2000 because, he says, his condition has progressively worsened. This allegation is not without evidentiary support; for instance the record reveals that by October 1999 Johansen's disc herniations had increased in size. Nonetheless, as the ALJ found, a restriction to light work was still appropriate in 2000 because Johansen's *symptoms* had "remained relatively unchanged . . . with only brief periods of symptom increase." For example, though Johansen complained to Dr. Olson

in November 1998 of increased neck pain, he reported back in January 1999 that the pain had been relieved by his new medication. Further, as the Commissioner points out in her brief, some of Johansen's complaints of symptom exacerbation during 1998 and 1999 were temporary and due to outside factors, such as the "heavy lifting" Johansen did in connection with his move to a new apartment.

Johansen also argues that the ALJ should have accorded controlling weight to Dr. Olson's opinion that Johansen could lift and carry no more than ten pounds. But a treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). And in this case, Dr. Olson's conclusion that Johansen did not have the ability to perform light work is contradicted by the earlier opinions of treating physicians Timmerman and Salvi, as well as that of consultative physician Bussan. Further, Dr. Olson's general opinion that Johansen was "unable to work gainful employment because of his chronic neck [pain], left arm pain and low back pain" is not conclusive on the ultimate issue of disability, which is reserved to the Commissioner. *Id.*

Johansen spends much of his brief arguing that the ALJ erred in concluding that his activities of daily living were consistent with the ability to perform light work. Johansen is right that involvement in "minimal" daily activities does not necessarily contradict a claim of disability. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Here, however, we doubt whether Johansen's daily activities (*e.g.*, performing his home exercise and traction program, grocery shopping, doing laundry, driving a car, and walking one mile daily) qualify as truly "minimal." *See Scott v. Sullivan*, 898 F.2d 519, 524 n.6 (7th Cir. 1990) (claimant's testimony that he could help out around the

house, carry groceries, set the table, ride a bike, and go hunting and fishing supported ALJ's conclusion that claimant was not limited to sedentary work). In any event this is a question we need not decide because, even assuming that Johansen's activities can be characterized as minimal, the ALJ's decision adequately explained how Johansen's allegation that he could not perform light work was inconsistent with the record viewed as a whole. *See Zurawski*, 245 F.3d at 887 (in rejecting a claimant's allegations of disabling pain, ALJ must explain how those allegations are inconsistent with the medical findings in the record). Specifically, after detailing all the relevant medical evidence, the ALJ found that Johansen's pain and symptoms had remained "relatively unchanged" since 1996 and thus concluded that there was "no justification in the record to change [his] light work restriction to a sedentary restriction." Indeed, other than Dr. Olson, every physician involved in this case uniformly opined that Johansen retained the ability to perform light work. There was, in short, an abundance of evidence supporting the ALJ's conclusion that Johansen's "medically determinable impairments could reasonably cause some, but not all, of the pain and symptoms alleged."

Next, Johansen challenges the ALJ's finding that he retained the mental RFC to perform repetitive, low-stress work. The problem with the ALJ's decision, according to Johansen, is that it does not mention VE Goldsmith's testimony that an individual could not perform sustained employment if he was unable to maintain a regular schedule or attendance twenty-five to fifty percent of the time. As we mentioned above, Goldsmith's testimony was based on Dr. Berney's finding that Johansen could not perform activities within a schedule, maintain regular attendance, and sustain an ordinary routine without special supervision between twenty-five and fifty percent of the time. The ALJ's decision accepts Dr. Berney's testimony

as true but does not make even a passing reference to Goldsmith's opinion based on that testimony.

Despite this omission we conclude that there was still substantial evidence supporting the ALJ's decision. In formulating the hypothetical to present to Goldsmith, the ALJ relied on consultative physician Matkom's opinion that, because Johansen was "not significantly limited" in seventeen of twenty work-related areas of mental functioning, he retained the mental RFC to perform repetitive, low-stress work. The ALJ then credited Goldsmith's testimony that a hypothetical individual with this RFC would be able to perform a significant number of jobs in the regional economy.

The ALJ did not err in relying on Dr. Matkom's assessment of Johansen's mental RFC. Both Dr. Matkom and Dr. Berney found that Johansen was essentially "moderately limited" in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. Dr. Matkom, however, went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work. Dr. Berney, on the other hand, did not make an RFC assessment (nor did state-agency physician Ingison). Thus, because Dr. Matkom was the only medical expert who made an RFC determination, the ALJ reasonably relied upon his opinion in formulating the hypothetical to present to Goldsmith. *See Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) ("All that is required is that the hypothetical question [to the VE] be supported by the medical evidence in the record."). Though Goldsmith may have disagreed with the ALJ's RFC assessment, such determinations are reserved exclusively to the Commissioner, 20 C.F.R. § 404.1527(e), and there was substantial evidence to sup-

port the specific determination made by the ALJ in this case.

### III. CONCLUSION

The ALJ's decision is supported by substantial evidence. Accordingly, the judgment of the district court upholding the denial of benefits is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*