UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 18, 2005[*]
Decided August 31, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 04-4131

| | |
|---|---|
| DOROTHY CLEMONS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| v. | |
| | No. 03 C 4200 |
| JO ANNE B. BARNHART, *Defendant-Appellee*. | Harry D. Leinenweber *Judge*. |

**O R D E R**

Dorothy Clemons applied for disability benefits and supplemental security income in March 2000 on the basis of osteoarthritis and asthma dating from 1999. Her claim was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge ("ALJ"). The district court upheld the denial, and we affirm.

---

[*] Dorothy Clemons moved to waive oral argument. Accordingly, this appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2).

In her submissions to the Social Security Administration, Clemons described constant pain in her back, neck, shoulder, hands, knees, and feet. To relieve the pain, she relied on pain-killers, warm baths or a heating pad, and topical arthritis medicine. According to Clemons, the pain prevented her from walking "for long," running, or "throwing a ball." She said she spent her days watching television or "lying down," and left the house about twice a week to dine, attend church, or see movies. She said she sometimes did laundry and was able to dress herself but needed help with buttons and with her hair. She also stated that she suffered from severe asthma that kept her awake at night and impaired her ability to cook, shop, and perform household chores.

Physicians evaluated Clemons' health several times between January 2000 and March 2002. In January she was hospitalized with pneumonia and her treating physician, Dr. Thomas Liske, reported that she was in general good-health, took no medications, could walk a mile, and climb nine steps. Liske noted that Clemons smoked five cigarettes per day, had smoked since the age of sixteen, and that her last bout of pneumonia occurred approximately three years ago. During a follow-up visit in March, Liske reported Clemons' pulmonary function was normal, with no signs of pneumonia or asthma.

In May 2000, the Bureau of Disability Determination Services asked Dr. Roopa Karri to examine Clemons. He determined that she suffered from asthma, emphysema, arthritis of her knees, wrists and hands, hypertension, and a history of recent pneumonia. Clemons falsely told Karri she did not smoke. In July of that year, Dr. Virgilio Pilail prepared a Physical Residual Function Capacity Assessment for Clemons stating that she could lift twenty pounds occasionally or ten pounds frequently; stand, walk and/or sit for six hours in an eight-hour day; engage in unlimited pushing and pulling; occasionally climb, kneel or crawl; frequently balance, stoop or crouch; and could not tolerate concentrated exposure to fumes, odors, dusts, gases, or poor ventilation.

Clemons visited Dr. Liske again in June 2000 and told him she felt well aside from a cough. Liske prescribed Celebrex for an exacerbation of arthritis in her knees and ankles and noted that an x-ray of her chest was within normal limits. Two months later, Liske reported that Clemons was "better overall." In May 2001 and November 2001 Clemons suffered acute episodes of bronchitis which cleared up in response to medication. Finally, in 2002, Clemons saw Liske for back pain. A Magnetic Resonance Image (MRI) showed some mild disk bulging and mild degenerative changes, but no significant spinal canal narrowing.

At the time of her hearing before the ALJ in April 2002, Clemons was 53 years old, 5'2" tall and weighed 160 pounds. She testified, at slight variance from her application, that she drove approximately once a week; regularly visited with

neighbors and family, attended church, and went shopping; performed household chores such as cooking, washing dishes, cleaning, and laundry; and took care of her own bathing, dressing, and grooming. Despite doctors' orders to stop smoking, she admitted that she smoked four cigarettes per day. She further testified that her ailments included constant knee pain, intermittent back pain that was exacerbated by sitting, pain in her non-dominant right hand, asthma, seasonal pneumonia, and general olfactory sensitivity to perfumes and strong odors. On a scale of one to ten, she rated her pain as a "nine."

Clemons described her prior work as a "packer" and "roper" for a meat-packing plant from 1977 to 1995. This job required her to be on her feet all day and included tasks such as tying ropes around packed meat products, lifting thirty to fifty pound boxes, and moving stacks of boxes that might weigh up to 500 pounds on wheeled hand-trucks. She recounted that in 1995 she suffered a work-related shoulder injury that required surgery; she did not return to work after the surgery because, according to Clemons, she was having difficulty breathing and the cold temperatures in the plant made her uncomfortable.

The ALJ denied Clemons' application despite the fact that her impairments prevented her from returning to her past work because she retained the capacity to perform light-level work. In reaching this conclusion the ALJ relied on vocational expert ("VE") testimony that a person with Clemons' abilities and limitations could perform any of 7,000 light-level roping or packing jobs or 10,000 light-level cashier jobs in the Chicago area. The ALJ discredited her subjective complaints, pointing out that the medical evidence did not support her description of her limitations and that she misled an evaluating physician about her smoking habit.

This court will uphold the ALJ's decision if it is supported by substantial evidence in the record. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Evidence is "substantial" when a reasonable person would find it sufficient to support the decision. *Id.*

Clemons makes three main arguments. First, she contends that the ALJ wrongly determined that she was not credible because she exaggerated her pain and lied about smoking. An ALJ's credibility determination is given "special deference" and must be upheld unless the claimant shows it to be "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Clemons contends that she was not exaggerating about her pain; but the MRI report characterized her condition as mild, and she does not challenge the other evidence the ALJ relied on: the absence of any observable pathology to explain her reports of knee pain, her ability to walk without the aid of an assistive device, and the doctor's report that she had "pain-free straight leg raising and full range of motion of her hips, ankles and spine." As to her smoking, Clemons argues that under *Shramek v. Apfel*, 226 F.3d

809, 812-13 (7th Cir. 2000), her smoking does not undermine her credibility. But the ALJ did not reject her credibility merely because she smoked. Rather, the ALJ found that her lie about smoking detracted from her believability as a witness. The ALJ's reasons for discounting Clemons' testimony are thus specific and supported by the record and therefore we will not disturb his credibility determination. *See Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004).

Second, Clemons contends that the ALJ failed to compare her record evidence to the listing of impairments in the Social Security regulations. The burden of proof on this issue is Clemons', *see Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), but not only did she fail to point to any evidence that she meets a listed impairment, she conceded in April 2002 that her impairments did not meet any listing. In any event, the ALJ compared the evidence of record to listings that specifically address musculoskeletal and respiratory impairments, and found that her impairments did not meet or equal either listing. *See* 20 C.F.R. Part 404 Subpart P, Appendix 1 §§ 1.00, 3.00. The doctor that reviewed her record for the agency also found that her impairments did not equal a listing, and the ALJ was free to rely on that determination as well. *See Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004).

Third, Clemons contends that the ALJ failed to consider all of her medical conditions in crafting her RFC. Specifically, Clemons asserts that the ALJ ignored evidence that she suffered chronic obstructive pulmonary disease (COPD), granulomatous disease with parenchymal scarring, emphysema, dyspnea, pneumonia, recent pneumonia, bronchitis, musculoskeletal problems, thrombocythemia, adenopathy, hypertension, and obesity. According to the two doctors who made reports of Clemons' pulmonary function, she had little or no pulmonary obstruction. Those doctors necessarily considered the first seven ailments she mentions because all are forms or causes of pulmonary obstruction. The ALJ cited the doctors' reports and thereby incorporated consideration of Clemons' pulmonary ailments into his decision. *See Skarbek*, 390 F.3d at 504. In addition, the ALJ considered Clemons' asserted musculoskeletal problems when he discussed her MRI report. Although the ALJ did not explicitly consider her thrombocythemia, adenopathy, hypertension, and obesity, according to Dr. Pilail's report these illnesses were insignificant in determining her present limitations. An ALJ is not required to address every inconsequential point a claimant raises. *See Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). The ALJ properly discussed only Clemons' main ailments, concluding that her back condition was

"mild," that her asthma was "under control," and that she experienced no functional limitations related to arthritis. *See id.* at 288-89.[1]

The ALJ did not, as Clemons contends, rely on his own "hunches" instead of medical authority in refusing to find her mild back condition disabling. We will generally find that an ALJ has abandoned his role as a decision-maker only if he has "failed to address relevant evidence" in reaching his conclusions. *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001). Here, the ALJ accurately noted that the only medical evidence of record showed that Clemons had only mild back problems, and he permissibly discredited her subjective claim of extreme pain. Neither did the ALJ err, as Clemons suggests, by allowing the VE to determine which jobs might include concentrated exposure to pulmonary irritants. This is precisely the sort of question that an ALJ regularly enlists a VE to answer. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005) (ALJ must consult VE to determine range of work that a claimant with non-exertional impairments may perform).

Finally Clemons contends that the hypothetical question posed by the ALJ to the VE was incomplete. It is true that the question did not include a listing of all of her ailments, but a laundry list of illnesses is unnecessary. Instead, a hypothetical must include "*all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in the original). The hypothetical the ALJ posed to the VE addressed every limitation that Dr. Pilail found to be supported by the medical evidence. The hypothetical question posed to the VE was supported by medical evidence and therefore the ALJ's conclusion, supported by the VE's testimony that Clemons could perform light work, was based on substantial evidence. *See id.*; *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002); *Cass v. Shalala*, 8 F.3d 552, 555-56 (7th Cir. 1993).

AFFIRMED.

---

[1] Even Clemons seemed less concerned with her other ailments since she failed to mention them at her hearing or in any of her other submissions. Her first request for review of the ALJ's decision focused on her claims of arthritis, pain, and asthma and did not include the laundry list she presents to us.