NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 13, 2010
Decided August 4, 2010

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3019

PATRICK J. TURNER,

　　　　　*Plaintiff-Appellant*,

　　　*v.*

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　　　　*Defendant-Appellee*.

Appeal from the
United States District Court
for the Northern District
of Illinois, Eastern Division.

No. 07-C-1520

Michael T. Mason,
*Magistrate Judge*.

**O R D E R**

　　　　Patrick Turner appeals a district court decision affirming the denial of his claim for disability insurance benefits under the Social Security Act. We conclude that substantial evidence supports the administrative law judge's determination that Turner was not entitled to disability insurance benefits and therefore affirm.

**I. Background**

Turner is 51 years old and lives in Streator, Illinois. He is married and has five children. He left high school at the start of his senior year, but earned his GED shortly thereafter. For the bulk of his professional life, he worked as a unionized painter—mostly at nuclear power plants. In 1998 while working at the LaSalle nuclear plant, Turner injured his lower back transporting two 100-pound buckets of paint. As a result of this accident, Turner's back popped and pain radiated down his left leg. Turner was able to perform light-duty work for the following year until his neurologist advised him to stop working because he was on his feet too long. Turner ultimately received a workers' compensation settlement in the amount of $175,000.

Turner filed his application for disability insurance benefits on December 5, 2002. His claim was denied initially and again upon reconsideration. Turner then requested an administrative hearing, which was held on December 1, 2005, before an Administrative Law ("ALJ"). The ALJ denied Turner's claim.

**A. The ALJ's Ruling**

The Social Security Act defines a disabled individual as one who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations promulgated by the Commissioner of Social Security for evaluating disability claims, an individual is not considered disabled if his residual functioning capacity—along with the individual's age, education, and work experience—allows him to perform a significant number of jobs. 20 C.F.R. § 404.1520(a)(4)(v). Based on these statutory and regulatory standards, the ALJ denied Turner's claim for disability benefits.

The ALJ was confronted with conflicting medical evidence concerning the precise nature of Turner's physical condition. The ALJ received medical reports from several doctors—some based on personal examinations of Turner, others based solely on a review of Turner's medical files—including three who prepared reports at the request of Disability Determination Services ("DDS"). The ALJ also received a residual functional-capacity report ("RFC") from a nurse-practitioner and heard testimony from Turner himself. Some of the medical evidence indicated that Turner could not perform even sedentary work due to persistent pain in his back, but the prevailing view was that Turner's physical limitations were less severe than he claimed.

After reviewing and weighing the available evidence, the ALJ ultimately found that Turner "has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except that he is limited to lifting no more than ten

pounds at a time. He requires the option to alternate between sitting and standing." While acknowledging that Turner could no longer perform his past work as a painter, the ALJ concluded that Turner's capacity for sedentary work, in addition to his age, education, and work experience, directed a finding of "not disabled" given the applicable regulations and the number of jobs available to a person in Turner's condition.

## B. Subsequent Procedural History

Turner administratively appealed the ALJ's decision to the Appeals Council. As part of this appeal, Turner submitted additional evidence for review. The Appeals Council incorporated these additional documents into the administrative record but agreed with the ALJ's decision. Turner then sought judicial review. The parties agreed to conduct the proceedings before a magistrate judge who granted the Commissioner's motion for summary judgment. Turner now appeals.

## II. Discussion

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Evidence is substantial if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (quotation marks omitted). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Ultimately however, the issue before us is not whether Turner is disabled, but whether the findings of the ALJ were supported by substantial evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

Furthermore, we can only consider evidence that was actually before the ALJ. 42 U.S.C. § 405(g); *Rice v. Barnhart*, 384 F.3d 363, 366 n.2 (7th Cir. 2004) ("Although technically a part of the administrative record, the additional evidence submitted to the Appeals Council . . . cannot now be used as a basis for a finding of reversible error."). This is important because Turner's brief improperly includes multiple references to evidence that was never presented to the ALJ.[1] With this framework in place, we now turn to the merits

---

[1] Section 405(g) does provide a mechanism for courts to compel the Commissioner to

(continued...)

of Turner's appeal.  Turner attacks the validity of the ALJ's findings on four separate grounds.

## A. "Playing Doctor"

Turner's first argument is that the ALJ impermissibly "played doctor" by substituting his personal observations for the considered judgments of medical professionals.  *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").  In particular, Turner takes issue with the ALJ's interpretation of an MRI taken on June 30, 1999.  Turner claims that the MRI (which itself is not in the administrative record) indicates more extensive physical damage than the ALJ credited.  We are satisfied that the ALJ considered the MRI through the perspective of the various doctors who reviewed the MRI report.

In particular, the ALJ specifically recounted Dr. Matthew Ross's review of the results of Turner's MRI.  Dr. Ross personally examined Turner on two separate occasions as part of Turner's then-pending workers' compensation claim.  In 2000 Dr. Ross reviewed the MRI in question and concluded that it showed degenerative disk changes and only a *minimal* left-sided L5-S1 disk herniation.  Dr. James Graham, who conducted the first review of Turner's medical files for the DDS, reached the same conclusion regarding the MRI, and he further determined that Turner was capable of frequently lifting items weighing up to 10 pounds (a limitation mirrored in the ALJ's ultimate findings).  The ALJ was critical of Dr. Aftab Khan, a doctor who conducted a personal examination of Turner at the direction of the DDS and who prepared the medical report that is most supportive of Turner's claim for disability benefits.  The ALJ noted that Dr. Kahn apparently did not consider the MRI at all and instead relied on his observations about Turner's physical limitations.  After reviewing this medical evidence, the ALJ ultimately decided that the results of the MRI were not consistent with Turner's claim that he was incapable of performing even sedentary work.  This finding is well supported by the medical evidence; the ALJ did not substitute his own judgment for that of the medical experts.

---

[1](...continued)
consider new evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Turner asked the magistrate judge to grant a remand on this basis, but this request was denied on the grounds that the additional evidence could not be considered "material" to Turner's disability claim.  Turner did not challenge this holding on appeal, so we have no need to consider this issue any further.

**B. Dr. Khan**

Turner's second argument is that the ALJ improperly discounted Dr. Khan's conclusion—following a personal examination of Turner in 2003 at the behest of the DDS—that Turner could lift but not carry five pounds. Turner argues that this opinion is entitled to great weight because Khan was the only DDS doctor who examined him personally. To support this claim, Turner relies on *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982), but that case concerned the weight to be given the opinions of a *treating* physician, and Dr. Khan was not Turner's treating physician. He examined Turner only once, and thus was not as intimately familiar with his medical history or course of treatment as a treating physician.

Importantly, the ALJ was quite clear in explaining why he was not persuaded by Dr. Khan's report. The ALJ determined that Dr. Khan's medical conclusions were based on Turner's own reporting and responses in the examination room rather than on objective medical evidence. "An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). Indeed, Turner does not dispute that Dr. Khan's findings were heavily influenced by Turner's self-reporting of his physical limitations.

The ALJ also specifically explained the reasons why he suspected Turner of exaggerating his physical limitations to Dr. Khan. First, Turner was obviously aware that this DDS-directed examination would factor prominently in any subsequent disability hearing, so there was a clear motive for Turner to understate his physical capacity and overstate his limitations. Second, Turner "demonstrated significantly less functional ability" during his 2003 evaluation with Dr. Khan than he did in 2001 when he met for the second time with Dr. Ross. Following that 2001 visit, Dr. Ross had concluded that it was "realistic" that Turner could lift at the 25-pound level. The three other DDS physicians who reviewed Turner's medical files also found that Turner was capable of much greater physical movement than he seemed to acknowledge during his visit with Dr. Khan.

Turner notes that his examination by Dr. Khan occurred two years after his last examination by Dr. Ross, and so his condition could have deteriorated by then. But there is no objective medical evidence that Turner's physical condition actually worsened after 2001, and he does not identify any subsequent developments that could have plausibly exacerbated his condition. "An ALJ must only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice*, 384 F.3d at 371). Here, the ALJ exceeded this standard, and Turner has identified nothing in the record that undermines the ALJ's explanation for discounting Dr. Kahn's opinions.

**C. Nurse-Practitioner Duffield**

Turner next argues that the ALJ erred by refusing to credit a 2005 RFC prepared by Patricia Duffield, a nurse-practitioner. Starting in 2002, Duffield performed annual examinations of Turner. Her primary purpose was to help Turner manage his pain, and to that end she regularly secured refills for his prescriptions for Vicodin and Ultram. In 2005 Duffield completed an RFC on Turner's behalf. Duffield described Turner's prognosis as "poor." She also stated that Turner was not a malingerer, and that on a 1-10 scale, Turner self-rated his pain at 7-10 daily. Duffield noted that Turner could not fully flex his back and had an abnormal gait, sensory loss, reflex changes, muscle spasm, muscle atrophy, muscle weakness, and reported impaired sleep. Based on these findings, Duffield concluded that Turner would need to shift positions at will from sitting, standing or walking, and would be unable to do any of these three activities for more than two hours out of an eight-hour workday. Duffield also concluded that Turner could not stay seated for more than five minutes at a time and would require unscheduled breaks of between five and ten minutes every half hour in order to manage his pain.

Duffield's assessment of Turner's physical limitations is sharply at odds with the ALJ's holding, and Turner contends that the ALJ erred in not giving Duffield's account "controlling weight." This argument falls short on multiple fronts. The Social Security Administration's regulations provide that the opinion of a "treating source" will be given controlling weight only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). A nurse-practitioner, moreover, is not a "treating source." *See* 20 C.F.R. § 416.902 ("Treating source means [a claimant's] physician, psychologist, or other acceptable medical source . . . ."); *id*. § 416.913(d)(1) (listing nurse-practitioner among occupations that are not "acceptable medical sources").

Turner attempts to get around this problem by claiming that Duffield completed the 2005 RFC in collaboration with a supervising doctor, a Dr. Podzamsky. But there is no evidence that Podzamsky ever examined Turner—let alone treated him. Contrary to Turner's assertions, Podzamsky never "signed" the 2005 RFC. The last page of the RFC contains only a stamp bearing Podzamsky's name; the report was completed and signed by Duffield. Turner insists that Duffield might have transcribed Podzamsky's own observations. This is pure speculation; Duffield's notes do not indicate that Podzamsky personally examined Turner. In sum, the ALJ had very solid reasons for concluding that Duffield alone was responsible for the 2005 RFC.

Furthermore, the ALJ concluded that "the limitations set forth in the report are dramatically inconsistent with the x-ray and MRI evidence as well as the clinical findings,

and findings of Dr. Ross, the treating neurosurgeon, and would still be entitled to little weight." In order to be entitled to controlling weight, a treating source's opinion cannot be "inconsistent with the other substantial evidence [in the record]," § 404.1527(d)(2), and here, the ALJ carefully identified the ways in which the 2005 RFC was not in line with the bulk of the medical evidence in the record.

Turner correctly notes that the ALJ erroneously described Ross as a "treating neurosurgeon." Ross examined Turner but was not in fact a treating physician. This error was harmless, however. There is absolutely no indication that the ALJ gave Ross's opinion the "controlling weight" of a treating physician's—on this matter or any other. Indeed, the point of the ALJ's "dramatically inconsistent" statement is that the 2005 RFC is inconsistent with a host of other indicators regarding Turner's physical condition. Every doctor who reviewed the MRI found only "minimal" herniation. Also, although Duffield recorded that Turner experienced muscle atrophy, no other doctor observed this phenomenon. Similarly, Duffield noted greater sensory loss and reflex changes in Turner than did any of the doctors. Finally, the ALJ noted that Duffield's treatment notes were inconsistent with the significant and constant pain she attributed to Turner in her RFC. The ALJ's decision to give Duffield's opinion "little weight" was amply justified.

### D. Turner's Daily Activities

Turner's final argument is that the ALJ erred in concluding that Turner's daily activities revealed that he was less physically impaired than he claimed to be.[2] The ALJ observed that Turner was capable of vacuuming, sweeping, dish-washing, cooking, grocery shopping, yard work, and fishing. Turner claims that the ALJ failed to acknowledge that he performs these activities slowly and with great pain and discomfort. This is essentially a challenge to the ALJ's credibility determination, which is entitled to "special deference" on appeal. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). We will only reverse an ALJ's credibility determination if the claimant can show that it is "patently wrong," *id*., and Turner has not satisfied this high burden. Turner's daily activities—even if accompanied by pain—can fairly be construed as inconsistent with his claim that he is physically unable to perform even sedentary work.

---

[2] Turner claims in passing that the ALJ should have asked the vocational expert how a sit/stand/lie restriction would have altered Turner's job prospects. This unsupported argument does not appear to have been raised below, so it is forfeited. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

In short, substantial evidence supports the ALJ's determination that Turner can perform sedentary work and thus is not disabled.

AFFIRMED.