NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 1, 2010
Decided October 14, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1014

| | |
|---|---|
| PATRICIA MILLIKEN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District |
| | of Illinois, Western Division. |
| *v.* | |
| | No. 3:08-cv-50144 |
| MICHAEL J. ASTRUE, Commissioner of | |
| Social Security, | P. Michael Mahoney, |
| *Defendant-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Patricia Milliken applied for Disability Insurance Benefits alleging disability due to multiple sclerosis ("MS"), right shoulder pain, and a back injury. An Administrative Law Judge ("ALJ") decided that Milliken was not disabled within the meaning of the Social Security Act through her date last insured. The district court upheld the denial of benefits. Milliken appeals, and we affirm.

**I. Background**

Milliken alleges disability from MS, right shoulder pain, and a back injury. She had worked in an assembly job, but quit in 1996 because of problems using her hands. Milliken's disability application was denied initially and on reconsideration. She requested a hearing before an ALJ. ALJ Maren Dougherty held a hearing on August 13, 2007, at which Milliken, represented by counsel; her daughter; a medical expert; and a vocational expert testified. The ALJ issued a decision denying Milliken's claim. Milliken appealed to the Appeals Council, which denied review. She then sought review in the district court, and the Commissioner's decision was upheld. This appeal followed.

Milliken's insured status expired on March 31, 2002. Thus, she bore the burden of proving disability as of that date; she was not eligible for social security disability benefits after that. *See Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010).

This appeal focuses on Milliken's mental impairments and complaints of debilitating fatigue. At the hearing before the ALJ, Milliken testified that she suffers from MS and is tired all the time. She claimed that she has been tired for years and has slept most of the time in the last ten years. Milliken testified that she had exacerbations of her MS in 1997, 1999, and 2005. She stated that during the 1997 exacerbation, she had stiffness and achiness and all she could do was sleep. She described the 1999 MS exacerbation as a very, very bad "knife pain" in her shoulder that lasted for about one year. She claimed that she couldn't sleep. Milliken and her daughter both testified that around March 2002, when the daughter was on bed rest, Milliken wasn't feeling well, could not do much to help the daughter, and slept much of the time.

Clinical psychologist Joseph Cools, Ph.D., testified as a medical expert at the hearing. He had reviewed Milliken's medical records and was present during her testimony and her daughter's testimony. Dr. Cools testified that some evidence in the record indicated that prior to March 31, 2002, Milliken suffered from depression, secondary to MS. He said that depression typically goes along with MS. He noted that Milliken had chronic pain and that she complained of fatigue. Dr. Cools opined that Milliken's depression limited her functioning to some degree. He attributed to Milliken's depression limitations in her ability to concentrate and maintain relationships with others without having an emotional reaction. He added that she had some limitations in her ability to maintain concentration, attention, pace and persistence, and in her ability to engage in close relationships with others. Despite these limitations, Dr. Cools believed that Milliken probably would have been able to have limited, casual contact with the general public and would have been able to relate effectively to supervisors and coworkers on a very casual basis. He opined that from a psychological perspective, Milliken would have been able to sustain unskilled work tasks.

Susan Entenberg testified as a vocational expert ("VE"). The ALJ posed a hypothetical to her inquiring whether an individual of Milliken's age, education, work experience (which the VE had described as unskilled), who was limited to lifting and carrying twenty pounds

occasionally and ten pounds frequently, standing frequently, walking occasionally, sitting without limitation, with occasional postural activities, and no more than frequent use of the hands, could perform any work. The VE responded that such an individual could perform work at assembly jobs (10,000 jobs), packer jobs (5000 jobs), and some machine operator jobs (5000 jobs). She testified that the jobs she identified required the individual to maintain a certain rate of production. The VE added that the jobs required no contact with the general public and no more than occasional contact with coworkers and supervisors.

The ALJ found that Milliken suffered from severe impairments through her date last insured, March 31, 2002: MS, myofascial pain,[*] and depression, but that none of them met or medically equaled a listed impairment. The ALJ assessed Milliken's residual functional capacity ("RFC"), finding that she had the capacity to perform light work with the restrictions of no more than occasional walking, standing frequently if allowed to change position, and no more than frequent use of her hands. The ALJ further found, based on the VE's testimony, that through her date last insured, Milliken was unable to perform her past relevant work, but given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could have performed. Accordingly, the ALJ found that Milliken was not disabled at any time through her date last insured.

Milliken sought review before the Appeals Council, which denied review, making the ALJ's decision the final decision of the Commissioner. Milliken proceeded to the district court. The parties consented to a decision by a magistrate judge, and the court upheld the Commissioner's decision. Milliken appealed.

## II. Discussion

We review the ALJ's decision and will affirm if it is supported by substantial evidence. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). We do not reweigh the evidence but consider whether the ALJ has built an "'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Id.* (quoting *Craft*, 539 F.3d at 673).

Milliken makes three arguments on appeal. She first argues that the ALJ erred in failing to

---

[*] Myofascial pain syndrome is a chronic form of muscle pain that centers around sensitive (trigger) points in a person's muscles. MayoClinic.com, Myofascial pain syndrome, http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042 (last visited Oct. 8, 2010).

include in her RFC assessment Milliken's limitations in concentration, persistence and pace.[**] Milliken also argues that the ALJ failed to include in her RFC assessment Milliken's limitations in social functioning. Her last argument is that the ALJ failed to properly analyze her complaints of debilitating fatigue.

## A. Limitations in Concentration, Persistence and Pace

Milliken first challenges the ALJ's RFC assessment on the ground that it included no limitations in concentration, persistence and pace. In assessing an individual's RFC, which "is the most [an individual] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1)), an ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing Social Security Ruling 96-8p). The ALJ found that Milliken had MS, myofascial pain, and depression. The ALJ also found that the depression manifested itself primarily as fatigue, which resulted in no more than a moderate limitation in concentration, persistence and pace. (The Social Security Administration rates the degree of limitation in this functional area on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).)

More specifically, Milliken argues that the ALJ did not sufficiently account for her mental limitations by limiting her to unskilled work. She relies on *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009), *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), and *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004), to support her argument. In *Stewart*, we reversed the denial of a claimant's petition for attorney's fees under the Equal Access to Justice Act. In doing so, we rejected the Commissioner's argument that the ALJ accounted for Stewart's mental impairments by restricting the hypothetical to the VE to simple, routine tasks. *Stewart*, 561 F.3d at 684-85. In *Craft*, we held that a hypothetical limited to simple, unskilled work did not account for Craft's mental limitations, including difficulties with memory, mood swings, and limitations in social functioning and concentration, persistence, and pace. *Craft*, 539 F.3d at 676-78. Finally, in *Young*, we held that the hypothetical restricted to "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" failed to adequately account for all medical limitations, *Young*, 362 F.3d at 1004, including an "impairment in concentration," *id.* However, in concluding that the hypothetical was flawed, we emphasized the failure to account for the limitations in temperament and social judgment, not concentration. *Id.* at 1004.

---

[**] Dr. Cools also said that Milliken is limited in her ability to maintain attention as well, but Milliken does not assert error with respect to the omission of this limitation. Presumably this is because the Social Security Administration's evaluation of mental impairments includes an assessment of functional limitations in four broad areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). We likewise limit our discussion to the limitations in concentration, persistence and pace.

None of these cases is on point. None holds that a limitation to unskilled work can *never* adequately account for moderate limitations in concentration, persistence and pace. And none involved a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment. That occurred in *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), where the ALJ's hypothetical relied on a consultative physician's opinion that given the claimant's mental limitations, he could still perform repetitive, low-stress work. *Id.* at 288-89. We held that the ALJ reasonably relied on the consultant's mental RFC assessment in formulating the hypothetical to the VE. *Id.*

We have a like situation here. Dr. Cools testified that on or before March 31, 2002, Milliken suffered from a medically determinable mental impairment, depression. He attributed to her depression limitations in her abilities to maintain concentration, persistence and pace, and to engage in or maintain close relationships with others without having an emotional reaction. Dr. Cools added that Milliken probably would have been able to have limited, casual contact with the general public and relate effectively to supervisors and coworkers on a very casual basis. Having identified these limitations, Dr. Cools opined that Milliken would have been able to sustain unskilled work tasks. Thus, as in *Johansen*, a medical expert opined that despite the claimant's mental limitations, she could still perform unskilled work.

Granted, neither the ALJ's RFC assessment nor the hypothetical to the VE included limitations in concentration, persistence and pace. But the RFC assessment is not an end in itself. It is but a tool with which the ALJ assesses "what work-related activities the claimant can perform despite her limitations," *Young*, 362 F.3d at 1000, and assists in the determination whether she can perform past relevant work or other work, *see id.* Here, the ALJ's hypothetical to the VE was limited to unskilled work and thus incorporated Dr. Cools's assessment that given Milliken's mental limitations, she could still perform unskilled work. Accordingly, we conclude that the ALJ adequately accounted for Milliken's limitations in concentration, persistence and pace.

## B. Limitations in Social Functioning

Milliken next argues that the ALJ's RFC assessment failed to account for her impaired social functioning. The Commissioner concedes that the ALJ did not specifically include any limitations in social functioning. However, he asserts that the ALJ did not find that Milliken had any such limitations and, in any event, reasonably concluded that the jobs identified by the VE adequately accounted for Dr. Cools's opinion regarding Milliken's limitations in social functioning.

Dr. Cools testified that Milliken would have had limitations in her ability to engage in close relationships with others without having an emotional reaction. He added that she likely would have been able to have limited, casual contact with the general public and would have been

able to relate effectively to supervisors and coworkers on a very casual basis. The ALJ questioned the VE about the amount of social contact that would be required for the jobs that the VE had identified as ones that an individual with Milliken's age, education, work experience, and RFC could perform. The VE responded that the jobs she had identified did not require any contact with the general public and would not require more than occasional contact with supervisors and coworkers.

It was reasonable for the ALJ to conclude that the jobs identified by the VE accounted for the limitations in social functioning noted by Dr. Cools. Although Dr. Cools opined that Milliken could have limited, casual contact with the general public, the jobs the VE identified required even less than that: no contact with the general public. Milliken doesn't dispute this. Instead, she argues that the VE's testimony doesn't account for her limitation to "casual contact" with supervisors and coworkers. While the VE stated that she wasn't sure what "casual contact" meant, the ALJ's interpretation that it meant "no more than occasional contact" is not unreasonable. Milliken suggests that one could have occasional contact with supervisors and coworkers that was intense in nature. True, but the VE identified only unskilled jobs. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Unskilled work would not seem to require intense contact with supervisors and coworkers, for example, meetings analyzing various aspects of the job, which Milliken suggests.

It is reasonably clear that Dr. Cools was drawing a distinction between close personal relationships on the one hand, and limited, casual contacts on the other. The jobs that the ALJ found Milliken capable of performing were the same jobs that the VE identified as ones requiring no contact with the general public and no more than occasional contact with coworkers and supervisors. A restriction to no more than occasional contact with others does not seem to be in tension with an inability to engage in close personal relationships. The ALJ corrected any error in failing to include in the RFC assessment limitations in social functioning by posing a hypothetical to the VE that reasonably accounted for such limitations.

### C. Complaints of Debilitating Fatigue

Last, Milliken challenges the ALJ's analysis of her complaints of debilitating fatigue. The ALJ's assessment essentially boils down to an adverse credibility determination which is reviewed deferentially and upheld unless it is "patently wrong." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). We examine "whether the ALJ's reasons for discrediting testimony are unreasonable or unsupported." *Id.*

In not fully crediting Milliken's complaints of fatigue, the ALJ stated that she found it "interesting" that Milliken and her daughter both testified that fatigue was Milliken's biggest problem in March 2002, but the most contemporaneous medical record (from February 2002)

discussed a brief episode of numbness in the feet but no complaint of fatigue. The district court found this analysis suspect, and the Commissioner does not defend it on appeal. The medical record cited by the ALJ concerned a consult for a second opinion about Milliken's leg and foot numbness and dragging. Milliken likely had no reason to complain at that time about fatigue. Furthermore, the medical records as a whole well document Milliken's repeated complaints of fatigue and tiredness to her medical providers over time. The testimony of Milliken and her daughter also lends support to Milliken's claims of fatigue.

We note that the ALJ did not find that Milliken did not suffer from fatigue. Rather, she found that the intensity, persistence and limiting effects of fatigue were not debilitating. Fatigue is a common symptom of both MS and depression. National Multiple Sclerosis Society, What we know about MS, http://www.nationalmssociety.org/about-multiple-sclerosis/what-we-know-about-ms/symptoms/index.aspx (last visited Oct. 8, 2010); Mayoclinic.com, Depression (major depression), http://www.mayoclinic.com/health/ depression/DS00175/DSECTION=symptoms (last visited Oct. 8, 2010). That fatigue is a common symptom of MS and depression, however, reveals nothing about the severity, intensity, or persistence of fatigue that any individual may experience at a particular point in time. *See* National Multiple Sclerosis Soc., *supra* (indicating that MS symptoms can change over time). This one, weak reason for discrediting Milliken's complaints of fatigue does not require a remand, however.

The ALJ also gave several good reasons for finding that Milliken's fatigue was not disabling through her date last insured. ALJ Dougherty reasoned that prior to that date, Milliken had discrete episodes of MS that resolved. She also stated that some of Milliken's complaints did not emerge until the 2005 exacerbation. In addition, the ALJ relied on Milliken's own testimony, which the ALJ characterized as describing "the true line of demarcation in terms of her activities as July 2005." The ALJ found this line of demarcation consistent with the medical evidence. And she observed that the record contained no opinion from a treating or examining physician indicating that prior to March 31, 2002, Milliken was disabled or had limitations greater than those found by the ALJ. Milliken does not dispute this last assessment of the record.

Milliken challenges the assertion that prior to her date last insured she had "discrete episodes of MS that resolved." She argues that the ALJ identified no medical or other evidence to establish that her MS had resolved. We do not read the ALJ's decision as asserting that Milliken's MS had resolved itself, but that the few discrete episodes of MS exacerbation that she had before her date last insured had resolved themselves. This assertion is consistent with Milliken's own testimony: She testified that her last and biggest exacerbation was in 2005 and that she had exacerbations in 1997 and 1999, during which her symptoms were aggravated. She also agreed that MS is known for its exacerbations and then some improvement.

Milliken identified the 2005 MS exacerbation as the point in time when she became unable to do activities she used to do. Significantly, it was during the 2005 exacerbation that she started having to use a cane all the time. It was then that she began taking medication for her depression and her mood swings "went up and down." She also started taking medication for fatigue during her 2005 exacerbation, though she doesn't take it all the time. She began taking Avonex for her MS as well. In addition, it was in 2005 that the heat started really bothering her and caused her to limit her activities. Milliken testified that she had vision problems since 2002, but they apparently worsened in 2005. It was then that it became more difficult for her to read and she enjoyed reading less. She used to read about a book a week; at the hearing she testified that she reads "once in a while." Milliken also stated that before her 2005 exacerbation she cooked more "family" meals and bigger meals and made pies "once in a while," but after 2005 she could no longer do these things. She cooked only once or twice a week, made simple meals—just salad and meat—and bought pies instead of making them.

The record also establishes that prior to the 2005 MS exacerbation, Milliken had taken a trip to Europe in 2003. On that trip she walked and pulled luggage. The record indicates that Milliken reported walking several (even five) miles a day and engaging in what she described as "a vigorous day of water aerobics" prior to her latest MS exacerbation in May 2005. To sum it up, in Milliken's own words, since 2005 she has "changed a lot in [her] life."

Milliken argues that the ALJ failed to detail what activities she engaged in prior to the 2005 exacerbation that indicated she was not disabled. Though the ALJ referred to Milliken's array of activities generally, she did specifically mention an exercise program that included walking. The failure to specifically mention that the exercise program included, by Milliken's own account, "vigorous" water aerobics and walking several miles a day does not suggest that the ALJ failed to consider the rigorous nature of Milliken's exercise program. This case is unlike *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001), in which we found that the claimant's daily activities were "fairly restricted"—washing dishes, helping children prepare for school, doing laundry, preparing dinner—and not the sort that necessarily undermine or contradict claims of disabling pain. *Id.* at 887. Nor is it like *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000), in which we found that the claimant's minimal daily activities—performing household chores punctuated by rest, cooking simple meals, grocery shopping about three times a month, walking with rest after three to five blocks—did not undermine her complaints of disabling pain. *Id.* at 872. It is also distinguishable from *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004), in which we disagreed with the ALJ that a complaint of disabling pain was inconsistent with activities such as performing household chores and walking up to two miles. As noted, Milliken herself testified about how her activities had changed since the 2005 MS exacerbation. The ALJ could reasonably find that Milliken's testimony about her activities prior to the 2005 exacerbation undermined her complaints of disabling fatigue. That the ALJ did not explicitly mention each activity is not fatal to her analysis.

Moreover, the medical evidence supports the finding of a line of demarcation with the 2005 MS exacerbation. Milliken's medical records show that she was referred to the Mayo Clinic for symptoms that began in May 2005. Milliken began taking several medications for her MS, fatigue, and other symptoms in 2005. Other symptoms surfaced only after Milliken's date last insured. For example, in April 2005, Milliken complained of paresthesia (a sensation often described as numbness, tingling, pins and needles, or a pricking feeling, Nat'l Inst. of Neurological Disorders & Stroke, NINDS Paresthesia Information Page, http://www.ninds.nih.gov/disorders/parathesia .htm (last visited Oct. 8, 2010) and pain in her hands prior to having bilateral carpal tunnel surgery. At that time, she reported that her symptoms began two years before.

The ALJ gave good reasons supported in the record for finding that Milliken's complaints of debilitating fatigue and other symptoms prior to her date last insured were not fully credible. Milliken has not satisfied her heavy burden of showing that the ALJ's credibility determination is patently wrong.

We recognize that the fact that Milliken's condition may have worsened at the time of the 2005 MS exacerbation does not compel the finding that she was not disabled prior to her date last insured. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("The fact that, according to her daughters, Wilder got worse in 1988 and 1989 does not indicate how bad she was in 1986."). Nonetheless, it is Milliken's burden to produce medical evidence to support her claim of disability prior to her date last insured. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). The ALJ's conclusion that she failed to establish disability prior to that date is supported by substantial evidence.

### III. Conclusion

We AFFIRM the district court's judgment.