In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 13-3607

GENE WILLIAMS on behalf of PAMELA J. TOWNSEND,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social
   Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:12-CV-153-JEM — **John E. Martin**, *Magistrate Judge.*

———————

ARGUED JUNE 11, 2014 — DECIDED JULY 2, 2014

———————

Before WOOD, *Chief Judge,* and POSNER and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* Pamela Townsend applied for so-cial security disability benefits and supplemental security income in February 2003. She was 44 years old and claimed she'd become incapable of full-time gainful employment in May 2002 when she had stopped working as a result of a cascade of physical and psychiatric ailments. In January 2012

an administrative law judge decided that she had indeed become totally disabled, but not until November 2008. By the time that decision was rendered she had died (of pulmonary diseases apparently unrelated to the ailments alleged to have made her totally disabled). Her father, Gene Williams, was substituted for her, and he argues (appealing from the district court, which upheld the administrative law judge's decision) that she had become totally disabled earlier. If so, her estate, which he represents, is entitled to the additional disability insurance benefits (but not supplemental security income) to which she would have been entitled. See 20 C.F.R. §§ 404.503(c), (d), 416.542(b)(4), 416.1334.

Williams had her first hearing, which was before a different administrative law judge, in November 2004. She and her father both testified. The administrative law judge determined that she was not totally disabled, but she appealed, and in May 2007 the decision was reversed by the district court and remanded to the Social Security Administration. After a hearing at which father and daughter again testified, the administrative law judge again denied benefits and this time the Social Security Administration's appeals council reversed and remanded, directing that on remand the case be assigned to a different administrative law judge. In January 2012, after a hearing in 2011 at which neither Townsend nor her father testified though both were at the hearing, the new administrative law judge held that Townsend had become totally disabled as of November 1, 2008. Townsend died several months after the hearing and it thus was Williams who appealed the administrative law judge's ruling partially adverse to his daughter's claim. He wanted the date on which she had become totally disabled pushed back to May 1, 2002. But the district court affirmed the administrative law judge's

decision concerning the onset date, precipitating the father's appeal to this court.

It is not disputed that by May 2002 and continuing until her death, Townsend suffered from fibromyalgia, defined by the Mayo Clinic's staff as "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals," and that it sometimes follows "significant psychological stress." Mayo Clinic, "Diseases and Conditions: Fibromyalgia," www. mayoclinic.org/diseases-conditions/fibromyalgia/basics/defi nition/con-20019243 (visited June 24, 2014). She testified at her first two hearings (remember that she didn't testify at the third one) that she had chronic pain (including burning pains in her hands, shoulders, neck, back, and knees), edema (swelling in limbs—mainly the legs, in her case—caused by excess fluids trapped in bodily tissues), severe headaches, and difficulty sitting, standing, and walking; that she had leg tremors and fell frequently; that she suffered from post-traumatic stress disorder, chronic anxiety with acute episodes (panic attacks), depression, night terrors, and sleepwalking (with the bizarre feature that she would smoke and sometimes even cook while sleepwalking); and that her psychiatric problems had been exacerbated by her being raped in 2002.

All these conditions were corroborated by extensive medical records—she had been examined by a number of doctors and therapists between 2002 and her death—and by testimony by both her parents (with whom she lived).

Her health deteriorated in 2008. She had to use a cane in walking, fell a lot because of tremors in her leg, and by January 2009 had to use a walker. In finding that she hadn't become totally disabled until November 2008, the administrative law judge (the second one, remember) began with the testimony of the only witness (besides a vocational expert) at the hearing before her: a doctor who testified that the medical evidence in the record supported diagnoses of "fibromyalgia and chronic pain and, perhaps, myofascial and musculoskeletal pain," as well as "psychiatric [ailments], anxiety and depression, et cetera." He continued: "Obviously, if [the neurologist's] examination and findings are operative, nobody with those findings would be able to work," but that "I don't have enough information to sort out whether her inability … to ambulate and weakness is an underlying medical disorder or whether this is due to [undiagnosed] psychiatric disorders."

From this testimony the administrative law judge concluded that fibromyalgia was Townsend's "only medically determinable physical impairment" and that "the evidence in the medical record does not support any diagnoses that would explain … [her] alleged symptoms such as leg tremors and frequent falling." The administrative law judge said that she gave the doctor's testimony "great weight" in her "determination that the claimant's falling had no medically determinable cause and that fibromyalgia is the only medically determinable physical impairment."

As for Townsend's psychiatric ailments, the administrative law judge noted that these had been treated with drugs such as Prozac, beginning in 2002; and she commented that the drugs had been effective. "Somewhat

effective" would have been more accurate. For in 2005, as the administrative law judge noted, a psychologist had diagnosed Townsend with major depressive disorder and various symptoms of post-traumatic stress disorder, including nightmares and panic attacks. Oddly, the psychologist had nevertheless assigned her a "Global Assessment of Functioning" of 65, which indicates (more precisely, the range from 61 to 70 indicates) only "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning …, but generally functioning pretty well." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). (The fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity … and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).)

The administrative law judge did not mention that fewer than three months after the psychologist's exam, a psychiatrist had assigned Townsend a GAF of only 45, and the range from 41 to 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV*, *supra*. A year later another psychiatrist assigned Townsend a GAF of 45 too, which the administrative law judge acknowledged, adding however "but this rating took into account the claimant's physical problems with chronic pain and loss of function and her frustration with needing to be financially dependent on her parents." We're troubled by the "but" and what follows it,

which seems to imply that the administrative law judge thought the GAF 45 rating irrelevant because it took account of "frustration," which might be normal, but probably was not normal in Townsend's case. The psychiatrist made clear that Townsend was frustrated, stressed out, and feeling guilty (all of which are mental) because of her disabilities and pain.

As we—and other circuits—have emphasized repeatedly in reviewing denials of disability benefits by the Social Security Administration's administrative law judges, the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling. See, e.g., *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (per curiam); *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). This is required by the Social Security Administration's own regulation, 20 C.F.R. § 404.1523, which states: "we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." The second psychiatrist who rated Townsend a GAF 45 conducted that holistic analysis, since pain and "loss of function" (as in difficulty walking) and even frustration at being financially dependent on one's aged parents can exacerbate a disability caused by psychiatric illness.

Immediately after criticizing that psychiatrist's report, the administrative law judge declared that "the claimant's medically determinable mental impairments did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore

nonsevere." She had dropped physical limitations from the analysis because the doctor who testified at the hearing had said that the medical record didn't identify a medical condition that (in the administrative law judge's words) could have caused Townsend's "alleged symptoms such as leg tremors and frequent falling." It was from that testimony that the administrative law judge must have inferred that there was no "medically determinable cause" of Townsend's falling. But the doctor had not testified that there was no medically determinable cause of Townsend's alleged symptoms, but only that fibromyalgia was not the cause and therefore Townsend should have additional medical tests to determine the cause. She didn't take the suggested tests; the administrative law judge did not say why. She may have been too ill; she died only five months after the hearing.

The administrative law judge amplified her "minimal limitations" conclusion as follows. Regarding "activities of daily living," she said that Townsend had "mild limitation due to mental issues." She acknowledged that Townsend reported "having problems with all activities of daily living and did not drive due to pain and medications," but said "the record demonstrates that [Townsend's] limitations in this area were related to physical pain rather than mental problems"—as if that eliminated the "limitations" from consideration of whether she was disabled (again a failure to consider the combined effects of her ailments).

The administrative law judge said much the same thing about Townsend's "social functioning," but regarding "concentration, persistence or pace" found only low energy and a slight negative effect on short-term memory and noted that the psychologist who had found these things—the same

psychologist who had assigned her a GAF of 65—"was unsure if [Townsend] was maximally motivated to participate in the evaluation, since she was concerned about maintaining her Medicaid eligibility." There was other medical evidence of memory problems, but the administrative law judge did not mention it. She noted that Townsend had "never had a psychiatric hospitalization."

She then returned to Townsend's physical ailments, largely repeating what she had said earlier but now making clear that she thought Townsend's "statements concerning the intensity, persistence and limiting effects of her fibromyalgia symptoms … not credible prior to November 1, 2008, to the extent they are inconsistent with" her being able to work.

That's it, so far as the administrative law judge's analysis is concerned. It was deeply flawed. One flaw was in assessing Townsend's credibility without asking any questions of her and her father even though both of them were present at the hearing. It's true that her lawyer told us at argument that he hadn't wanted either of them to testify, lest they contradict the testimony they had given at the earlier hearings. That is a very poor reason, but in any event the administrative law judge could and should have questioned daughter and father on her own initiative, as she could do without impropriety because a social security disability hearing is not adversarial. And it's not as if the administrative law judge had decided to rely on the credibility assessments of her predecessor; she never mentioned the proceedings before that judge.

The need to hear what Townsend might say concerning her physical ailments was essential because the medical

evidence was inconclusive. The doctor on whom the administrative law judge relied so heavily had not testified that Townsend was exaggerating her physical symptoms, but rather that since they probably had not been caused by fibromyalgia she should have additional medical tests (and remember that we don't know why she didn't have them) in order to determine the cause. Had she testified to those symptoms and the administrative law judge believed her and concluded that they were disabling, the absence of a medical diagnosis would be irrelevant. *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003); *Smolen v. Chater*, 80 F.3d 1273, 1282, n. 2 (9th Cir. 1996); *McLaughlin v. Secretary of Health, Education & Welfare*, 612 F.2d 701, 704–05 (2d Cir. 1980). Again this is the Social Security Administration's own rule: 20 C.F.R. § 404.1529(c)(2) states that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." There's nothing unusual about a person's having disabling symptoms that, though real, the doctors cannot explain—especially psychosomatic symptoms, which some of Townsend's symptoms may well have been.

Strangely, the administrative law judge actually recognized that a person can have disabling symptoms without a diagnosis when she concluded that Townsend had become totally disabled by November 1, 2008. She based that conclusion on the deterioration in Townsend's ability to walk and to avoid falling. She made no effort to determine the medical cause of the symptoms. She thought it enough to entitle Townsend to disability benefits that they existed and were disabling.

The administrative law judge committed the further error, remarked earlier, of ignoring the combined effect of Townsend's ailments on her ability to work. She considered Townsend's psychiatric problems and found them not to be disabling, and then considered her physical problems and found *them* not to be disabling either, but she ignored the possibility that the combination was disabling. It seems to have been a deadly combination—the physical symptoms aggravating the psychiatric symptoms, and the psychiatric symptoms in turn aggravating the physical symptoms. And finally the administrative law judge simply ignored some of Townsend's well-attested serious impairments—her edema (which required her to try to keep her legs elevated), her chronic pain, her severe headaches.

The errors that we've identified, taken together, require reversal of the district court's decision and a remand to the Social Security Administration for a redetermination of the date on which Townsend became totally disabled and thus eligible for disability insurance benefits. If that date was earlier than June 30, 2006 (the date of "last insured," which means the date on which she ceased to be covered by social security disability insurance), her father is entitled to his daughter's disability insurance benefits from that date until the date of her death.

We are mindful of the difficulty of determining that date, given that she cannot testify. But her father can, of course; nor is it clear that further testimony is required, given the abundant medical evidence relating to her disability that is already in the record.

REVERSED AND REMANDED.