NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 20, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-1523

| | |
|---|---|
| JUDITH MISCHLER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-CV-1567 |
| | |
| NANCY A. BERRYHILL, | William C. Griesbach, |
| Acting Commissioner of Social Security, | *Chief Judge*. |
| *Defendant-Appellee.* | |

**O R D E R**

Judith Mischler, a 47-year-old woman who suffers from depression and chronic pain, among other impairments, challenges the denial of her application for supplemental security income. Mischler contends that the administrative law judge erred by failing (1) to give controlling weight to her treating psychiatrist's opinion and (2) adequately to account for her limitations with concentration, persistence, and pace. Because we agree with Mischler on both counts, we vacate the district court's judgment affirming the denial of benefits and remand this case for further proceedings.

# I

Judith Mischler applied for supplemental security income in October 2013, alleging disability based on a spine disorder and constant pain following a botched hernia surgery. After the agency denied her initial application, Mischler requested reconsideration based on a "change in her illnesses" and alleged depression and anxiety, in addition to physical pain. (She previously had received benefits for depression and chronic abdominal pain, but those payments were suspended when she exceeded the resource limit for eligibility.) Mischler primarily challenges the ALJ's evaluation of her mood disorders, and so we focus on her medical history regarding those conditions.

## A. Medical History

Mischler was first diagnosed with persistent depressive disorder in 2001 when she was 30 years old. Generally, though, as Mischler put it, "life was going good" at that time. In 2004, things took a turn for the worse after she underwent a diaphragmatic hernia surgery, which Mischler says left her with constant pain and worsened her psychological problems. In the years since, multiple doctors have diagnosed her with recurrent major depressive disorder, anxiety disorder, and chronic pain disorder with associated psychological factors, among other ailments. In 2008, she spent a week in the hospital receiving inpatient treatment for her psychiatric conditions.

*Treating psychiatrist.* Mischler began seeing Dr. Sylvia Dennison for psychiatric care around 2003. At a March 2014 appointment, Dr. Dennison noted that Mischler "[had] not been seen in some time," but she did not specify the date of Mischler's most recent visit. (A week earlier, a doctor at a pain clinic noted that Mischler "follow[s] with Dr. Dennison in psychiatry and has followed with her for some time.") Dr. Dennison noted that Mischler was going through "a very stressful time," but Mischler reported that, given the circumstances, her mood was "fairly good."

By September 2014, however, Mischler reported increased, constant anxiety. "Unable to wait" for her next scheduled appointment with Dr. Dennison, Mischler saw a nurse practitioner at the same clinic. The nurse noted that Mischler had been treated by Dr. Dennison "for several years" and had been on multiple psychiatric medications, "none of which have worked optimally."

Between October 2014 and August 2015, Dr. Dennison met with Mischler about once a month. In October, Mischler reported that she "always feels low" and spends a lot of time crying. Dr. Dennison observed that Mischler "looked as downcast as she stated," "cried often and easily," moved slowly, and made only intermittent eye contact. Little had changed a few months later; Mischler told Dr. Dennison that she "often wonders why she continues to exist."

Alterations to Mischler's medication plan helped, at least temporarily. In March 2015, Mischler said that she no longer cried "all the time," and in May, she reported feeling less hopeless. Despite the improvements, Dr. Dennison noted that Mischler had lost weight, moved slowly, spoke in a monotone, and was "just not quite where she needs to be." In August, Mischler stated that she was "finally doing a little better." Even so, Dr. Dennison noted that her affect remained "flat" and she looked "fatigued and older than her stated age."

At Dr. Dennison's recommendation, Mischler attended therapy with Helen Cueny, a licensed clinical social worker, in July and August 2015. Cueny noted Mischler's goals for managing her mood disorders, which included "[r]educ[ing] the overall frequency and intensity of the anxiety response so that daily functioning is not impaired," and increasing "normal social interaction." Cueny assessed a Global Assessment of Function ("GAF") score of 60, indicating moderate difficulties with social and occupational functioning. See AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

Mischler returned to Dr. Dennison in October 2015 with complaints of worsening symptoms. Dr. Dennison noted that Mischler displayed "significant psychomotor retardation" and slow speech but appeared capable of focusing on their conversation. At a visit the following month, Mischler "cried off and on" and displayed what Dr. Dennison called "questionable" insight and judgment. The psychiatrist once again adjusted Mischler's medication regimen.

In December 2015, Dr. Dennison completed a treating-source statement evaluating Mischler's ability to do work-related activities. She opined that Mischler had "marked" limitations—defined on the form as a "serious limitation" whereby the person's ability to function is "severely limited but not precluded"—in relating to co-workers, dealing with the public and work stresses, functioning independently, understanding and carrying out complex instructions, maintaining attention and concentration, relating predictably in social situations, and behaving in an emotionally

stable manner. Dr. Dennison added that Mischler had difficulty focusing and was often anxious and "very emotional." She concluded that Mischler could work regularly for one to two hours a day.

*Pain doctors.* Several of Mischler's pain-management doctors also commented on her mood disorders, which have been linked to her chronic pain. For instance, at a January 2014 appointment, a nurse noted that Mischler was "crying" and "upset" during the visit, and at times had "a very difficult time controlling her tears." A doctor documented that though Mischler became "tearful at times" during his evaluation, she was "doing better overall in terms of her mood." In March 2014, he remarked that on two occasions Mischler seemed much happier than she had been in the past, but she was "really struggling" to control her anxiety.

Physicians at a different pain clinic also contemplated the interplay between Mischler's mood disorders and her chronic pain. In May 2015, one doctor referred to her "significant depression" as a "red flag" that might hinder pain-management possibilities. And records indicate that at three other clinic visits that year, Mischler became "tearful" when talking to a nurse, discussing her violation of her pain-agreement plan, or describing her pain levels.

*Agency consultant.* In April 2014, the agency's psychological consultant, Dr. Ellen Rozenfeld, reviewed Mischler's medical records and evaluated the severity and nature of her mental impairments. Dr. Rozenfeld determined that Mischler has a severe mental impairment that does not meet or equal a listing and that she exhibits "moderate" difficulties in maintaining concentration, persistence, or pace. In particular, Dr. Rozenfeld concluded that Mischler was "moderately limited" in carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. In her narrative, she also noted that Mischler had "moderately impaired but adequate" abilities to complete one- to three-step tasks, and that she could work "on a sustained basis … with occasional contact with others and occasional workplace changes."

## B. Administrative Proceedings

At a video hearing before the ALJ in December 2015, Mischler described how her impairments affect her daily activities. She testified that she has a hard time sleeping,

riding in a car, grocery shopping, cleaning, and performing basic hygiene tasks, and that she struggles with memory problems and social interaction. Mischler lives alone, but her two children occasionally assist her with chores. She explained that medications have not resolved her depressive symptoms or pain issues. Mischler previously owned a sawmill where she worked full-time until her 2004 surgery. She has not worked since.

The ALJ then asked the vocational expert ("VE") whether jobs existed in the national economy for a person of Mischler's age, education, and work experience, with certain limitations. The hypothetical claimant was limited to light exertional work and, as relevant here, "simple routine and repetitive tasks in a low stress job," defined as one with "only occasional decision-making required, only occasional changes in the work setting, and no piecework or fast moving assembly line type work" with only occasional interaction with coworkers. The claimant also would be expected to be off-task up to ten percent of the day. The VE opined that such a person could work as a mail clerk, cashier, order filler, and shipping clerk, except that a limit to only occasional interaction with the public would eliminate the cashier position. Finally, if the claimant were off-task more than ten percent of the day or had to miss two days of work a month, then the VE determined that she could not sustain full-time employment.

In a written decision, the ALJ applied the standard five-step analysis, see 20 C.F.R. § 416.920(a)(4), and concluded that Mischler was not disabled. The ALJ found that Mischler had not engaged in substantial gainful activity since October 25, 2013, the date of her application (step one); that her affective disorder, anxiety disorder, spine disorder, and pain disorder with chronic abdominal pain were severe impairments (step two); and that no impairment met the criteria of a listing (step three). See 20 C.F.R. Pt. 404, Subpt. P, App. 1. At step three, the ALJ gave little weight to Dr. Dennison's December 2015 statement, ruling that the marked limitations noted in the report were "totally inconsistent with her treatment notes and with the notes of the therapist [Cueny] that works for her." The ALJ instead "accept[ed] and adopt[ed]" Dr. Rozenfeld's "opinions and supporting rationale" in finding that Mischler has "moderate difficulties" with regard to concentration, persistence, or pace.

The ALJ then determined that Mischler has the residual functional capacity ("RFC") to perform light work with the limitations proposed to the VE, and that, although Mischler could not perform any past relevant work (step four), she could do other jobs available in the national economy (step five). Overall, the ALJ was skeptical of Mischler's claim, remarking that "[t]he records depict the claimant as an individual whose main priority is obtaining disability benefits."

The Appeals Council denied Mischler's request for review, and the district court upheld the ALJ's decision.

## II

We consider the district court's decision *de novo* and therefore review the ALJ's decision directly. See *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). We will uphold that decision if it is supported by substantial evidence in the record. See *id.*

Mischler first argues that the ALJ did not provide a good reason for refusing to give controlling weight to Dr. Dennison's December 2015 opinion. Under the treating-physician rule in effect at the time of Mischler's application, the ALJ must give a treating source's opinion controlling weight "if it is well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); see also 20 C.F.R. § 404.1527(c)(2). Here, the ALJ gave Dr. Dennison's opinion only "limited weight," finding "too many discrepancies" between the opinion and her treatment notes. But the ALJ failed to support this conclusion adequately, and so his decision to discount Dr. Dennison's opinion is not supported by substantial evidence. See *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016).

First, the ALJ improperly discounted the extent of the treating relationship. He noted that although Dr. Dennison's December 2015 opinion indicates that she had been treating Mischler for twelve years, her March 2014 treatment note states that she had not seen Mischler "for some time." But the 2014 note does not include the date of Mischler's most recent visit, and the record otherwise does not clarify when that was. In any case, it is undisputed that Dr. Dennison treated Mischler for many years and had nearly monthly contact with her for more than a year before completing the assessment, which weighs heavily in favor of affording her opinion great, if not controlling, weight. See 20 C.F.R. § 404.1527(c)(2)(i).

Second, the ALJ pointed to two instances in the record where Mischler reported that she was doing well—in March 2014 and August 2015—but he said nothing about the treatment records between or after these dates. Those records reveal worsening symptoms. We have insisted that an ALJ must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Particularly when it comes to mental impairments, "a person who

suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Third, the ALJ erroneously stated that Dr. Dennison's assessment of a "moderate GAF of 60" is "inconsistent" with the "marked" limitations noted in her December 2015 opinion. To begin with, Dr. Dennison was not the person who assessed this GAF score; it was the therapist, Cueny, and she did so after only one session with Mischler. (This is not the only instance in which the ALJ's factfinding is faulty. For instance, the ALJ also states that Mischler never required inpatient psychiatric treatment, which is clearly belied by the record.) And we have stated that a GAF of 60,[1] standing alone, does not preclude a finding of disability. See *Punzio*, 630 F.3d at 710.

Fourth, the record contradicts the ALJ's comment that Mischler "may present as emotional to Dr. Dennison, [but she] does not generally present as such to other providers." Mischler's other doctors routinely referred to her depression and anxiety, and at least four healthcare providers noted that she was emotional (tearful or crying) at her appointments during the relevant period.

Fifth, the ALJ stated that the many "marked" difficulties noted on the assessment are incompatible with living alone and internally inconsistent with the contention that Mischler could manage her own funds. But Dr. Dennison's assessment addresses only *work*-related activities. But difficulty functioning independently in the workplace does not necessarily translate to the same level of difficulty in the home. See, *e.g., Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). To the contrary, we repeatedly have cautioned against conflating a claimant's ability to perform household activities with an ability to work full-time. See *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Further, as Mischler testified, she does not keep up her home wholly on her own; rather, her two children assist with chores—a fact that the ALJ did not address.

Finally, the ALJ wrote that the treatment records do not support Dr. Dennison's assessment that Mischler has marked difficulties in attention and concentration, but he did not substantiate that finding. It is true that, in the select records the ALJ cites for this

---

[1] The American Psychiatric Association has since abandoned the GAF scale because of its "conceptual lack of clarity … and questionable psychometrics in routine practice." *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013)).

proposition, Dr. Dennison reported on several occasions that Mischler did not appear to have difficulty focusing on their conversations. But Dr. Dennison also noted that Mischler had trouble focusing "on things other than her physical pain or her financial stressors"; this record (which the ALJ ignores) directly supports Dr. Dennison's assessment that Mischler would struggle with attention and concentration in a work setting, where she is presumably not talking about pain or personal matters. Even if reasonable minds could disagree, this point alone does not justify the ALJ's decision to afford *little* weight to the treating-source opinion and instead adopt the opinion of the agency consultant, who did not examine Mischler and reviewed "only a fraction" of her treatment records. *Meuser*, 838 F.3d at 912; see also *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

The Commissioner argues that Dr. Dennison's opinion was not supported by medical evidence because she simply "noted and recorded" Mischler's complaints. As the Commissioner puts it, "the act of transcription does not transform her subjective allegations into medical evidence." We do not find this observation helpful. A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise. See *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Further, the trained physician, not the ALJ, is better positioned to discern "true" complaints from exaggerated ones. See *id.*

Mischler also argues that the ALJ failed adequately to account for her moderate limitations in concentration, persistence, and pace in the RFC and in the hypothetical question posed to the VE, rendering the vocational testimony unsupported by substantial evidence. Mischler is correct. Both the RFC and the hypothetical question presented to a VE must incorporate the "totality of a claimant's limitations," including any "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ need not use this exact terminology, so long as the phrasing "specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform." *Id.* Here, the ALJ limited Mischler to (1) "simple routine and repetitive tasks" in a low-stress job, defined as one involving only occasional (2) decision-making, (3) changes in the work setting, (4) and interaction with the public or co-workers; (5) "no piecework or fast moving assembly line type work;" and (6) the flexibility to be off-task up to ten percent of the day. This fails to account for the "moderate" difficulties in concentration, persistence, and pace identified in Dr. Rozenfeld's opinion, which the ALJ expressly adopted. See *Yurt v. Colvin*, 758 F.3d 850, 857–58 (7th Cir. 2014).

Regarding the first and fourth limitations, we have "repeatedly rejected the notion that a hypothetical … confining the claimant to simple, routine tasks and limited interactions with others adequately captures … [moderate] limitations in concentration, persistence, and pace." *Id.* at 858–59; *see also Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). A task can be simple, but a person with a poor attention span may still become distracted and stop working. The third limitation—regarding work-setting changes—primarily deals with workplace adaptation, rather than concentration, persistence, and pace. See *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015). As for the fifth, the ALJ's failure to define "piecework" or "fast-moving assembly line work" (which are not elsewhere defined) makes it impossible for a VE to assess whether a person with those limitations "could maintain the pace proposed." See *id.*

The Commissioner's arguments to the contrary are unconvincing. Indeed, her response brief focuses almost exclusively on the district court's analysis and makes little effort to defend the ALJ's decision. She cites *White v. Barnhart* for the proposition that we should take note of a district judge's "thorough and persuasive opinion," but conveniently ignores the preceding sentence in which we pointedly said that "we owe no deference to the district court in the social security context." 415 F.3d 654, 658 (7th Cir. 2005). The Commissioner directs our attention to *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), and out-of-circuit precedent to support the argument that the ALJ reasonably could adopt Dr. Rozenfeld's narrative assessment of Mischler's residual abilities. If that is so, the Commissioner reasons, the ALJ did not err by failing specifically to address each "moderate" limitation that the doctor had identified. The Commissioner reads *Johansen* too broadly. In that case, as in this one, the ALJ's hypothetical failed to incorporate expressly several areas in which a consultant had found the claimant "moderately limited." See 314 F.3d at 288. We upheld the ALJ's decision in *Johansen* because the consultant's opinion (on which the ALJ had reasonably relied) "translated" those findings into an RFC, and the RFC, by its wording, specifically excluded jobs likely to trigger the mood disorder that formed the basis of the claimant's relevant limitations. *Id.* at 288–89; see *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014) (discussing *Johansen*).

In contrast, Dr. Rozenfeld's bottom-line opinion does not adequately address the limitations that she assessed. For instance, she found Mischler to be moderately limited in her abilities to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions; and perform at a consistent

pace without an unreasonable number of breaks. Yet she concluded that Mischler could work on a "sustained basis" and that overall, her concentration and persistence capabilities were "moderately impaired but adequate" to complete one- to three-step tasks. Because Dr. Rozenfeld's assessment fails to account for all of Mischler's limitations, the ALJ was required to account for them himself—in the hypothetical and RFC. But he did not.

For these reasons, we VACATE the district court's judgment and REMAND the case to the agency for further proceedings.